McGill et al., Appellants, *v.* Leverington-Roxborough Savings & Loan Association.

Argued December 2, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Patrick T. Ryan,* with him *Drinker, Biddle & Reath,* for appellants.

*Louis S. Cali,* with him *Thomas J. Mullaney,* for appellees.

OPINION BY MR. JUSTICE POMEROY, October 12, 1971:

The principal issue presented by this appeal is whether a member of a savings and loan association has a right, enforceable in a court of equity, to compel a membership vote on a proposed merger of his association with another as a pre-condition to the merger.

Appellants are members of Leverington-Roxborough Savings and Loan Association ("Leverington"). In April, 1969 Leverington entered into a Joint Plan of Merger ("the plan") with James W. Baird Savings and Loan Association ("Baird"). The plan was unanimously approved by the board of directors of each association. Articles of merger were thereafter filed with the Pennsylvania Department of Banking ("the Department"), were duly advertised, and were approved by the Department in July, 1969, pursuant to the Savings Association Code of 1967, Act of December 14, 1967, P. L. 746, 15 P.S. 5101[1] ("the Code").

The present suit was commenced in June, 1969 by a complaint in equity seeking a permanent injunction of the merger.[2] The complaint alleged a refusal of

---

[1] The merger became effective September 2, 1969, upon the articles being lodged with the Pennsylvania Department of State by the Department of Banking, after requisite approval of insurance of accounts by the Federal Home Loan Board and completion of certain other formalities.

[2] The suit was brought as a class action on behalf of all the members of Leverington. Both savings and loan associations and the directors of Leverington were named as defendants.

Leverington directors to notify the members of their association concerning the proposed merger, or to furnish appellant with a membership list so that he could communicate with them. The injunction sought was alleged to be justified on the ground that appellant (and the represented class) would suffer irreparable injury in being subjected to a merger which is not in their best interests. In addition to the prayer that the merger be enjoined, the complaint prayed that the members of Leverington be allowed to vote on the proposed merger, that appellant be furnished with a list of the members of Leverington, and that he be allowed to communicate with them on the subject.[3] A hearing was had on the application for a preliminary injunction, following which, on August 4, 1969, the court preliminarily enjoined the merger, and withheld court approval thereof "until it [the merger] is first approved by affirmative vote . . . of a majority of the shares" of Leverington in accordance with rules set out by the court in its decree *nisi*. Exceptions to this decree were argued to a court *en banc*, which reversed the decree *nisi*, dismissed the complaint, and in February, 1970, entered a final decree in favor of appellees. This appeal followed.[4] We have concluded that the court *en banc* was correct, and affirm.

The Savings Association Code of 1967 is a comprehensive statute regulating the business of savings as-

---

[3] Defendants filed preliminary objections to the complaint challenging its sufficiency in various particulars, asserting that no showing had been made of irreparable injury, and that equity was without jurisdiction because plaintiff had an adequate remedy at law. The court reserved judgment on the objections pending the hearing. By paragraph 9 of his findings in support of a decree *nisi* for appellant, the court denied the preliminary objections.

[4] Although the merger became effective under the terms of the Savings Association Code prior to the date of the final decree, there has been no assertion that the case is moot, and we do not con-

sociations. Article XI, Section 1102, states the requirements for a merger, consolidation or conversion. Paragraph (b) of that section provides as follows: "(b) If the proposed merger, consolidation or conversion will result in an association subject to the provisions of this act, a federal savings and loan association or a savings bank, adoption of the plan by each party thereto shall require the affirmative vote of two-thirds of the entire membership of the board of directors of each association, federal savings and loan association, or the board of trustees of a savings bank. *The Department may require such vote of the members as it deems proper.*" (Emphasis supplied.) In the case at bar, as mentioned above, the adoption of the plan of merger received the unanimous affirmative vote of the boards of directors of both associations. The Department did not require any vote of the members, and none was taken.

Appellants argue that important property rights of members are involved, and that as a matter of fundamental fairness and in the exercise of its supervisory control over corporations (Act of June 16, 1836, P. L. 784, §13, 17 P.S. §282), a court of equity should intervene to protect those rights by allowing members to vote. "[S]urely", it is said, "the shareholders are the best judges of where their best interests lie."

Appellants have failed to demonstrate that such property rights as they may have are in danger of being adversely affected. Under the Code, a savings association does not have "shares" or "shareholders"; it has only members. A member is defined as a person holding a savings account of an association and a person borrowing on the security of a mortgage or purchasing

---

sider that it is. If membership approval of the merger were indeed a prerequisite to its validity, other rights of action could no doubt be invoked, even though the time had passed for the specific equitable relief prayed for in the present complaint.

property upon which a mortgage lien is held by an association. Section 102(17). Such a person has no equity or ownership interest in the sense that a shareholder of a business corporation or a bank has such an interest. A borrower is the converse of one who has an equity, and the holder of a savings account is in effect a creditor whose interest is limited to the amount of his deposit and the earnings thereon. These relationships are recognized by the Code. Thus Section 1109 provides that "no mortgage account member shall have any rights of any nature with regard to proceedings for merger . . . and shall conclusively become a borrower of the resulting association . . . in the event of a merger. . . ." As to a savings account member who dissents from a plan of merger, the same section provides that he "shall have the right to have his savings paid to him in full together with any and all additions thereto which have been credited to his account by way of earnings prior to the effective date of the merger . . . within thirty days of the receipt of notice by the association of his dissent." Rather than ignoring or jeopardizing the property right of a dissident savings account member in the event of merger, this section is expressly designed to protect it.[5]

Further protection is afforded by Section 608(c) of the Code, which provides, *inter alia,* that holders of savings accounts "who have not assented to or have dissented from" a merger shall receive notice of and may

---

[5] Appellants argue that Section 1109, by speaking in terms of a "member who dissents" from a plan of merger, implies that a member has a right to vote on the merger plan; "he cannot dissent from a plan of merger unless it is presented to him." We disagree. While voting would be one way of expressing dissent, it is not the only way, as the opposition of appellants to the plan here involved demonstrates. Notice of the merger is required to be given by advertisement (Section 1105 of the Code), and would undoubtedly come to the attention of members in other ways as well.

vote at any meeting of members "until they shall have been paid in full the amount lawfully due them". We thus conclude as a matter of law that the essential element of irreparable injury to appellants' property rights, asserted in the complaint in support of equity jurisdiction, is not here present.

Appellants contend that the bylaws of Leverington require submission of a plan of merger to its members if that association is not the surviving association in a merger.[6] This reading of the bylaw is strained and was not accepted by either the chancellor or the court en banc below. Beyond that, we think the bylaw would be inconsistent with Section 1102 of the Code, discussed infra, and therefore invalid. Section 211(b).

Finally, even were equitable jurisdiction otherwise present in this case, it would be precluded by the terms of Section 1102(b) of the Code, supra. The last sentence of the section, stating that the Department of Banking "may require such vote of the members as it deems proper", clearly places the determination of the desirability or necessity of a membership vote in the discretion of the Department. No claim of abuse of discretion is made, and the Department is not a party defendant to this suit. This investiture by the legislature of supervisory power in the Department is clearly not unlawful or unconstitutional. Cf. Conestoga Nat. Bank v. Patterson, 442 Pa. 289, 275 A. 2d 6 (1971). Appellants, however, are here seeking to have a court of equity do what the Department of Banking, in the exercise of its statutorily granted discretion, declined to do. The court below was quite right in refusing to intervene. See Calabrese v. Collier Twp. Mun. Auth.,

---

[6] The bylaw reads as follows: "In case this association is the surviving association in a merger, the Board of Directors shall not be required to submit the plan of merger to the shareholders for approval.

430 Pa. 289, 240 A. 2d 544 (1968); *Commonwealth v. Glen Alden Corp.*, 418 Pa. 57, 210 A. 2d 256 (1965); *Food Fair Stores, Inc. v. Kline*, 396 Pa. 397, 152 A. 2d 661 (1959); *Collegeville Borough v. Phila. Suburban Water Co.*, 377 Pa. 636, 105 A. 2d 722 (1954).

Decree affirmed; costs on appellants.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.