Commonwealth *v.* Wilson, Appellant.

236

Argued April 21, 1972. Before EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

*Benjamin Lerner,* for appellant.

*David R. Scott,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, November 17, 1972:

The Honorable Robert W. WILLIAMS, JR., sitting without a jury, found Appellant guilty of Voluntary Manslaughter, but not guilty of Murder or Involuntary Manslaughter. On April 22, 1971, Appellant's Motions in Arrest of Judgment and for a New Trial were de-

nied and he was sentenced to eighteen months to five years imprisonment. This appeal follows.

The sole question raised is whether the evidence presented was sufficient to support the verdict. The trial judge made the following findings of fact:

"On April 3, 1970, the [appellant] entered the Carnival Bar at 40th and Lancaster Avenue in Philadelphia at about 12:00 P.M. He had followed two friends of his, Bruce Reese and Eldridge Johnson, into the bar.

"Before Wilson could rejoin his friends, who had taken seats at the far end of the bar, he was invited by the deceased, Lawrence Wyatt, to have a drink with him. Wyatt then ordered two drinks, one for himself and one for Wilson. However, Wilson decided to consume both drinks himself. This precipitated an argument over who was going to pay for the beverages. This argument escalated into a physical fight with Wyatt striking Wilson and Wilson throwing a chair at Wyatt.

"At that point, one of the [appellant's] friends, Bruce Reese, ran over to join in the fray. Reese was soon followed by the [appellant's] other friend, Eldridge Johnson. The fight had reached a point where Reese, Johnson and the [appellant] Wilson all were beating Wyatt on the barroom floor.

"The bartender, Mr. Joseph Stallings, attempted to stop the fight. He grabbed the [appellant] Wilson and pinned him against the bar. But while Wilson was pinned against the bar, Eldridge Johnson stabbed Lawrence Wyatt with a knife and inflicted the wounds which caused the latter's death. There was no evidence that Norwood Wilson himself had any weapon." (Findings of Fact from pp. 1-2 of the Lower Court's Opinion dated June 16, 1971).

It is established beyond question that the wounds causing death of the victim were inflicted by one other than the appellant and therefore, criminal responsibili-

ty can only attach to the appellant through some theory of vicarious liability. All theories that are recognized under our law to hold one responsible for the criminal acts of another require the existence of a shared criminal intent. It is well settled that the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. *Commonwealth v. Yobbagy,* 410 Pa. 172, 177, 188 A. 2d 750, 752 (1963); *Commonwealth v. Neff,* 407 Pa. 1, 7, 179 A. 2d 630, 632 (1962); *Commonwealth v. Kirk,* 340 Pa. 346, 17 A. 2d 195 (1941), aff'g 141 Pa. Superior Ct. 123, 14 A. 2d 914 (1940); *Commonwealth v. Richardson,* 229 Pa. 609, 79 A. 222 (1911), aff'g 42 Pa. Superior Ct. 337 (1910). It is equally as clear that this element of shared criminal intent must be found to be present to justify a finding that an accused was an accomplice. *Commonwealth v. Lowry,* 374 Pa. 594, 600, 98 A. 2d 733, 736 (1953), cert. denied, 347 U.S. 914 (1954); *Commonwealth v. Thomas,* 357 Pa. 68, 72, 53 A. 2d 112, 114 (1947); *Commonwealth v. Doris,* 287 Pa. 547, 135 A. 313 (1926).

Here, the Commonwealth has not produced a scintilla of evidence to establish that the appellant shared a criminal intent with his friends. There is no indication that, prior to entering the bar, the three men formed an intent to engage in an altercation either with the decedent or anyone. To the contrary, this fight was spontaneous and partly precipitated by the decedent. All witnesses agree that the appellant did not sit with his friends from the time he entered the bar until the time they entered the fight. There was no testimony to suggest that he in any way invited or encouraged his friends to join in the struggle after it had begun. More importantly, there is no evidence that he encouraged, acquiesced in, or was even aware of the use of the knife. This court has held that a defendant who had

no prior knowledge of plans to commit a homicide and who in no way aided that homicide cannot be held responsible for it. *Commonwealth v. Giovanetti,* 341 Pa. 345, 353, 19 A. 2d 119, 123-124 (1941). Similarly, where a third party decides on his own initiative to become a participant in an affray between two others and without any request or encouragement, he alters radically the nature and course of the encounter, there can be no nexus of common intent to fasten vicarious criminal liability for the third party's acts on the initial participants.

We hold that on the facts of this case the Commonwealth has failed to establish any common understanding either explicit or implicit, formed either before or during the affray and that this failure is fatal to the case of the Commonwealth.

The judgment of sentence is reversed, the motion in arrest of judgment granted and the defendant discharged.

Mr. Chief Justice JONES and Mr. Justice POMEROY took no part in the consideration or decision of this case.